UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CONSERVATION LAW FOUNDATION, INC., | § § § | Case No. 1:16-cv-11950-MLW |
| Plaintiff, | § § | |
| v. | § § | |
| EXXONMOBIL CORPORATION, EXXONMOBIL OIL CORPORATION, and EXXONMOBIL PIPELINE COMPANY, Defendants. | § § § § § § | |

## JOINT STATEMENT: PRETRIAL SCHEDULE AND DISCOVERY PLAN

Pursuant to Fed. R. Civ. P. 26(f) and 16(b), Local Rule 16.1, and this Court's Order of September 24, 2018 (Doc. 49), Plaintiff Conservation Law Foundation ("CLF") and Defendants Exxon Mobil Corporation, ExxonMobil Oil Corporation, and ExxonMobil Pipeline Company ("ExxonMobil"), respectfully submit the following Joint Statement: Pretrial Schedule and Discovery Plan for purposes of the upcoming Scheduling Conference set for November 29, 2018.

**I.    Agenda.**

Discovery and pretrial scheduling and unresolved issues which may need Court intervention, including:

- Topics for and proposed phasing of discovery;

- Bifurcation of liability and remedies during fact discovery and trial;

- Timing of initial disclosures, dispositive motions, and expert discovery; and

- Limitations on discovery events.

II.     **Proposed Pretrial Schedule.**

The parties have conferred about a proposed schedule in these actions.  As of the date of this filing, Defendants' Motion to Dismiss the Amended Complaint, filed on December 20, 2017 (Doc. 36)[1] is pending and set for hearing on November 29, 2018.  As such, certain decisions contained in any ruling may alter the discovery relevant to the claims and defenses in this matter. The parties generally agree regarding discovery and motion timelines, but have been unable to reach an agreement on whether discovery should be phased.  Under Defendants' proposal, discovery would be divided into two phases, with an opportunity for dispositive motions following a limited initial phase.

Plaintiff's Position on Pretrial Schedule:  Plaintiff's discovery and pretrial timelines detailed below contemplate conducting all fact and expert discovery in a single phase, which would be completed in approximately one year.  Defendants' proposed phased discovery approach, on the other hand, would take twice as long, and is neither efficient nor warranted under the circumstances of this case.  Exxon's proposed phases would needlessly complicate discovery efforts and increase motion practice, and would not promote the just, speedy, and inexpensive resolution of the pressing matters presented in this case, which should be the goal of a proposed discovery plan.  *See* Chief Justice Roberts's 2015 Year-End Report on the Federal Judiciary, at 4 (Dec. 31, 2015).

Interpretation of the Permit is not a "central issue" in this case, and Plaintiff has made no representations to that effect.  The terms of the Permit are clear.  There is no need to dive into a rabbit hole of discovery when the extent of ExxonMobil's violations and how to cure them can be determined in a quick and efficient manner as proposed by Plaintiff.  Further, any decision

---

[1] *See also* Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint (Corrected Version) filed on January 25, 2018 (Doc. 42).

regarding the interpretation of terms within the Permit would not be dispositive of the claims that may be implicated, because even if the Court were to opine on the interpretation of the Permit provisions, CLF would still need additional factual discovery to resolve each of the causes of action.

The violations of the Permit's effluent limitations represent some of CLF's current evidence proving the multitudes of failures described in its Amended Complaint (*see, e.g.*, Sept. 12, 2017 Hr'g Trans. 88:1-7), but more discovery is needed, and is needed quickly, to determine the extent of ExxonMobil's violations and how to cure them to prevent the imminent and substantial threats that currently face CLF members and others who live, work and recreate around the Terminal from becoming a catastrophic reality.  The exigent nature of Plaintiff's claims demands that the alleged violations be addressed on an accelerated basis, and certainly not pushed behind permit interpretation issues that, to the extent necessary, could easily be resolved concurrent to factual discovery.

Under Defendants' proposal, Plaintiff would not be entitled to obtain discovery on all of the claims and defenses in the case.  Instead Plaintiff would be limited to a subset of claims as selected by Defendants.  This phased discovery approach would not in this case serve the purposes contemplated by Fed. R. Civ. P. 26(f)(3), quoted in this Court's Notice of the November 29, 2018 Scheduling Conference, as the structure proposed by Defendants would only delay the resolution of the pressing matters in this case, would needlessly complicate discovery efforts, and would not serve the purpose of reaching an expedited resolution of the claims.

Defendants' Position on Pretrial Schedule:   In order to facilitate swift and efficient resolution of the dispositive issues in this case, ExxonMobil proposes that discovery be phased such that it is limited, in the first instance, to information relevant to interpretation of the terms in

Everett Terminal's NPDES Permit ("Phase 1 Discovery").  This approach is consistent with the Court's Scheduling Order, which encouraged the parties to consider "phased discovery in which the first phase is limited to developing information needed for a realistic assessment of the case." (ECF No. 49)  Contrary to that Order, CLF essentially attacks the efficiency of phased discovery generally, rather than the appropriateness of phased discovery in this particular case.

As this Court has recognized, "the focus" of this suit will be whether there have been violations "of the current permit."  (Sept. 12 Hr'g Tr. 121:14–15.)  ExxonMobil believes that question can be resolved by determining what the permit requires, without roving discovery into CLF's allegations concerning the distant and speculative risks of climate change—much less protracted discovery into the extensive remedies CLF seeks to pursue.  Rather, the principal disagreements between the parties are **(i)** whether the Permit expressly modified the PAH effluent limits—which EPA itself has acknowledged are too low to be reliably measured—with a compliance limit; **(ii)** whether the flow rate of the continuous treatment system through Outfall 01C is 280 gallons per minute, as specified in the Permit, or a gallons per day standard that appears nowhere in the Permit, and **(iii)** whether state Water Quality Standards are measured in the receiving waters, after dilution—as required by regulation—or "at the end of the pipe," as CLF has unsuccessfully argued to EPA in the past.  By contrast, the actual discharges—which are clearly reported in EPA's Enforcement and Compliance History Online ("ECHO") database—are predominantly undisputed.  And indeed, EPA's ECHO database reports the Terminal to be in full compliance.  Accordingly, if the Court were to agree with the Permit interpretation endorsed by both ExxonMobil and EPA, the discharges CLF has alleged would establish no violations of those conditions, but instead would confirm the Terminal's compliance.

As CLF has previously conceded, its climate change claims concerning the adequacy of the Terminal's Storm Water Pollution Prevention Plan ("SWPPP") are derivative of the alleged current violations, which—under any proper understanding of the Permit—do not exist.  CLF has represented to this Court that all of its claims "are interconnected" and that the "effluent limitation violations wouldn't have occurred but had [the Terminal] used good engineering practices."  (Sept. 12 Hr'g Tr. 82:7–23, 86:19–23.)  CLF also told the Court that "the sum total" of the alleged violations concerning effluent limits and flow rates "gives rise to [the] RCRA" claim.  (*Id.* at 4:20– 5:5.)  That position is also reflected in the Amended Complaint.  Other than these allegations regarding purported historical violations of effluent limits, flow rates, and Water Quality Standards, the Amended Complaint's allegations regarding supposed defects in the SWPPP and Spill Prevention, Control, and Countermeasures ("SPCC") plan are entirely conclusory.

Accordingly, insofar as interpretation of the Permit cannot be determined on the pleadings, ExxonMobil requests that the Court **(i)** order an initial phase of narrowly tailored discovery directed at clarifying the Permit's requirements, and **(ii)** allow the parties to submit dispositive motions in support of their proposed interpretations of the Permit at the completion of Phase 1 Discovery.  At the conclusion of this "limited" initial phase of discovery, the Court may be able to dispose of the case in its entirety or at least substantially narrow the issues in dispute.  Such "phasing and sequencing [of] the topics which are the subject of discovery" has the potential to "facilitate settlement and the efficient completion of discovery," and develop information "needed for a realistic assessment of the case."  (Local Rule 26.3.)  ExxonMobil's proposal therefore would increase the likelihood of resolving this case efficiently and prior to trial.

Finally, CLF has not justified its claim that there is any exigency whatsoever to adjudicating its claims.  To the contrary, this case has been pending for more than two years, and

none of the claimed risks CLF suggests exist have materialized during that period.  Moreover, CLF has not otherwise advanced allegations of imminent risk.  In all events, for the reasons outlined above, the schedule proposed by CLF is not the best method for prompt resolution of this case.

## III.    Magistrate Judge.

The parties do not consent to trial before a magistrate judge.

## IV.    Initial Disclosures.

Plaintiffs served its Initial Disclosures on November 21, 2018.  In Defendants' view, Initial Disclosures are not due and would be premature prior to resolution of the pending Motion to Dismiss.  Until the Court rules on that motion, ExxonMobil believes it remains unclear whether discovery will be necessary and, if so, on which topics.

## V.    Settlement Proposals.

Consistent with this Court's direction following its ruling on Defendants' Initial Motion to Dismiss[2] Plaintiff's Complaint, the parties met in person on November 13, 2017, to discuss potential resolution of some or all of the claims.  These efforts were unsuccessful.  *See* November 30, 2017 Status Report (Doc. 35).  In addition, pursuant to with Local Rule 16.1(c), Plaintiff submitted a written proposal to Defendants on November 8, 2018.

Plaintiff:  Remains open to discussion of settlement.

Defendants: The Plaintiff's recent written settlement proposal generally mirrors the one sought during the discussion held in November 13, 2017.  As that effort was unsuccessful, ExxonMobil believes that further settlement discussions would not be productive at this point.  ExxonMobil submits that the Terminal is in full compliance with the current permit, and that

---

[2] *See* Order (Sept. 25, 2017) (Doc. 33).

demands to alter the Terminal's obligations under the Permit are not appropriate, particularly while its permit renewal application remains pending with EPA.

**VI.     Proposed Pretrial Schedule:**

**A.     Plaintiff's Proposed Discovery Plan**

**1.     Factual Discovery**

a)     All fact discovery is to be completed on or before April 30, 2019, with the possibility of an entry upon land at a later date to allow for a wet weather site visit.

b)     Within 7 days of the parties' completion of Initial Disclosures, the parties shall confer by phone as to the possibility and appropriateness of Cooperative Discovery of any or all types of information pursuant to Local Rule 26.1(A) and shall continue to confer as appropriate as discovery proceeds.

c)     No deposition shall exceed eight (8) hours over one (1) calendar day, unless otherwise agreed upon by the parties.

d)     Depositions of fact witnesses shall be completed on or before April 30, 2019.

e)     Discovery pursuant to Rule 26(b), entry upon land is to take place on or before April 30, 2019, with the possibility of additional such discovery to allow for a wet weather site visit.

**2.      Expert Disclosure and Discovery**

a)      Plaintiff shall disclose experts pursuant to Fed. R. Civ. P. 26(a)(2) and produce any expert reports on or before July 1, 2019.

b)      Defendants shall disclose experts pursuant to Fed. R. Civ. P. 26(a)(2) and produce any expert reports on or before August 1, 2019.

c)      Plaintiff shall produce rebuttal expert reports, if any, on or before September 2, 2019.

d)      The parties shall be entitled to depose any expert identified by the other side.  Expert Depositions shall be completed by October 2, 2019.

**3.      Proposed Schedule for Filing of Motions**

a)      Amendment of Complaint and/or Joinder/Addition of Parties: Plaintiff does not anticipate seeking to add additional defendants or claims. However, Plaintiff reserves the right to seek to amend their complaint, if necessary, within the Court's ruling on Defendants' pending Motion to Dismiss the Amended Complaint.

b)      Motions to Amend Pleadings, if any, shall be filed on or before January 22, 2019.

c)      Responses shall be due within 14 days pursuant to L.R. 7.1(b)(2).

**4.      Motions for Summary Judgement**

a)      Motions for summary judgment shall be filed on or before October 29, 2019.

b)      Responses shall be filed not later than 30 days after service of the motion.

c)       Replies, where leave has been obtained, shall be filed not later than 15 days after service of the response.

d)       Memoranda in support of motions for summary judgment and responses thereto shall be limited to 40 pages, and replies to 20 pages, double spaced.

**5.**      **Motions *in limine***

a)       Motions *in limine* shall be filed on or before January 15, 2020.

b)       Responses shall be filed on or before January 30, 2020.

c)       Replies, where leave or consent has been obtained, shall be filed on or before February 14, 2020.

**B.**      **Defendants' Proposed Discovery Plan**

**1.**      **Amendment to Pleadings:**  In the event the Court does not dismiss the Amended Complaint in its entirety and with prejudice, Plaintiff shall have 30 days to amend its pleadings following the Court's order on the pending Motion to Dismiss.

**2.**      **Answer:**  Defendant shall serve its answer within 14 days of the deadline for amendment of the pleadings.

**3.**      **Initial Disclosures:**  Initial disclosures required by Fed. R. Civ. P. 26(a)(1) shall be completed within 14 days of the deadline for filing the Answer.

**4.**      **Phase 1 Discovery:**

a)       "Phase 1 Discovery" shall be limited to discovery relevant to the interpretation of the terms in Everett Terminal's NPDES Permit.

b)      All Phase 1 Discovery shall be completed within 90 days of the deadline for completing initial disclosures.

5.      **Dispositive Motions I:**

a)      Dispositive motions, such as motions for summary judgment or partial summary judgment, and motions for judgment on the pleadings shall be filed within 30 days after the close of Phase 1 Discovery.

b)      Oppositions to dispositive motions shall be filed within 30 days of the deadline for filing dispositive motions.

c)      Replies in further support of dispositive motions shall be filed within 14 days of the deadline for filing oppositions.

6.      **Phase 2 Discovery:**

a)      If necessary to resolve disputed issues of material fact, the parties shall conduct a second phase of discovery ("Phase 2 Discovery").  Phase 2 Discovery shall be limited to fact discovery relevant to liability on any remaining claims under the Clean Water Act or the Resource Conservation and Recovery Act.

b)      All Phase 2 Discovery, other than the expert discovery described below, shall be completed within 120 days of the Court's ruling on any dispositive motions.

7.      **Expert Discovery:**

a)      Plaintiff's trial experts, if any, shall be designated, and the information required by Fed. R. Civ. P. 26(a)(2) shall be disclosed by the close of fact discovery.

b)      Plaintiff's trial experts shall be deposed within 90 days of the close of fact discovery.

c)      Defendants' trial experts, if any, shall be designated and the information required by Fed. R. Civ. P. 26(a)(2) shall be disclosed by the deadline for completing depositions of Plaintiff's experts.

d)      Defendants' trial experts shall be deposed within 90 days of the deadline for rebuttal expert disclosures.

8.      **Dispositive Motions II:**

a)      Dispositive motions, such as motions for summary judgment or partial summary judgment, and motions for judgment on the pleadings shall be filed within 45 days of the close of all discovery.

b)      Oppositions to dispositive motions shall be filed within 30 days of the deadline for filing dispositive motions.

c)      Replies in further support of dispositive motions shall be filed within 14 days of the deadline for filing oppositions.

9.      **Motions *in Limine*.**

a)      Motions *in limine* shall be filed 45 days prior to trial.

b)      Oppositions to motions *in limine* shall be filed 30 days prior to trial.

c)      Replies in further support of motions *in limine* shall be filed 21 days prior to trial.

10.     **Pretrial Conference.** A pretrial conference will be scheduled at the Court's convenience following the close of discovery and the Court's ruling on any dispositive motions.

C.      **Summary of Proposed Schedules**

| SUMMARY OF PROPOSED SCHEDULE | | | | |
|---|---|---|---|---|
| **EVENT** | **PLAINTIFF'S PROPOSED DEADLINE** | | **DEFENDANTS' PROPOSED DEADLINE** | |
| **Initial Disclosures** | November 21, 2018 | | 14 days following the deadline for filing the Answer | |
| **Amended Pleadings** | *Motion to Amend* | January 22, 2019 | 30 days following Court's order on the pending Motion to Dismiss | |
| | *Response to Motion to Amend* | Within 14 days after deadline for Motion to Amend | | |
| **Answer** | 14 days following Court's ruling on pending Motion to Dismiss, or filing of Amended Compliant | | 14 days following the deadline for Amended Pleadings | |
| **Fact Discovery** | Completed by April 30, 2019 | | Phase 1 Discovery completed 90 days after the deadline for Initial Disclosures | |
| | | | Phase 2 Discovery completed 120 days after the Court's ruling on any dispositive motions | |
| **Expert Discovery** | Plaintiff shall disclose experts and produce any expert reports | July 1, 2019 | Plaintiff designates experts and discloses Rule 26(a)(2) information | By the close of Phase 2 Discovery |
| | Defendants shall disclose experts and produce any expert reports | August 1, 2019 | Deposition of Plaintiff's experts. | Within 90 days of the deadline for Plaintiff's expert disclosures |
| | Plaintiff's rebuttal expert reports | September 2, 2019 | Defendants designate experts and disclose Rule 26(a)(2) information | By the deadline for deposing Plaintiff's experts |
| | Expert Depositions | October 2, 2019 | Defendants' Expert Depositions | Within 90 days of the deadline for Defendants' expert disclosures |

| **Dispositive Motions** | | N/A | Dispositive Motions I | Within 30 days after the close of Phase 1 Discovery |
|---|---|---|---|---|
| | | | Oppositions | Within 30 days after the deadline for Dispositive Motions |
| | | | Replies in Support | Within 14 days after the deadline for Oppositions |
| | Motion for Summary Judgment | Within 45 days after the close of all discovery | Dispositive Motions II | Within 45 days after the close of all discovery |
| | Oppositions | Within 30 days after the deadline for Motions for Summary Judgement | Oppositions | Within 30 days after the deadline for Dispositive Motions |
| | Replies in Support | Within 15 days after the deadline for Oppositions | Replies in Support | Within 14 days after the deadline for Oppositions |
| **Motions *in Limine*** | Motions | January 15, 2020 | Motions | 45 days prior to trial |
| | Opposition to Motion | January 30, 2019 | Opposition to Motions | 30 days prior to trial |
| | | | Replies in Support | 21 days prior to trial |
| **Pretrial Conference** | Final Pretrial Conference | To be scheduled by the Court | Pretrial Conference | To be scheduled by the Court |

## D.    Scope of Discovery

Plaintiff: The limitations sought by ExxonMobil, described below, to limit the scope of

discovery to the period after January 1, 2012 and to exclude discovery regarding climate change

are grossly inappropriate.  Plaintiff should be entitled to pursue all relevant discovery as permitted

by the Federal Rules of Civil Procedure to properly assert its claims and challenge defenses presented in this case.

At the close of the prior Motion to Dismiss hearing, and reiterated in the subsequent Order, the Court directed that the claims be narrowed to the "near future" so as to avoid claims that are not ripe for decision.  Order (Sept. 13, 2017), at 2 [Rec. Doc. 29].  The limitation of claims to the near future does not act to limit what is discoverable for those claims. For example, repeated and continuing increases in severe weather prior to the statute of limitations time frame stated in *Gwaltney* are relevant to demonstrate trends known to Defendants.  *Gwaltney*, 484 U.S. at 58-59 (holding that while no private action may lie where violations are wholly past, evidence of past violations can help prove a continuing violation as well as establish the likelihood of future violations).

In addition, this Court determined that, while the *cause* of increased severe weather and other climactic events might not be relevant to the claims CLF raises, the issue for the Court in this case was one of whether the climatic changes outlined by CLF had been and were continuing to occur during the Permit's time frame and whether such changes should have been considered and addressed by ExxonMobil pursuant to its obligations under the Permit.  As such, a blanket bar on any discovery regarding climate change and its impacts on the Terminal would not be appropriate.  As the Court described:

> Whether there's foreseeable imminent risk of substantial change or material change in sea level affecting – having the potential to affect the Everett terminal or whether there is a foreseeable increase in the intensity, severity, frequency of storms appears to me to be relevant.
> …
>
> And whether good professional engineering practice, as the term issued in the permit, requires consideration of foreseeable rises in sea level and the frequency and intensity of storms, does appear to me to be relevant and subject to discovery.

Record of Decision (Sept. 12, 2017), Hr'g Trans. 115:1-13 [Rec. Doc. 30]. ExxonMobil's citation to the Transcript at 111:20 – 112:6 omits the context of the statement from the Court. Specifically, the Court, in discussing CLF's claims, acknowledged that under the discovery rules, ExxonMobil's considerations of climate change would be discoverable, but that in the context of summary judgment, whether climate change exists would arguably not be material.

  <u>Defendants</u>: Defendants request temporal limits on the topics for discovery, to reflect the issues relevant to resolution of this suit. In the event Phase 2 Discovery is necessary to determine ExxonMobil's compliance with the permit, ExxonMobil requests that such discovery be limited to the period in which the permit has been in effect. As ExxonMobil described at length in its brief, pursuant to an agreement executed with EPA, the Terminal substantially upgraded its facilities to coincide with the issuance of the current Permit. (ECF No. 42 at 4–6.) After submitting design proposals to EPA for approval, the Terminal made "material and substantial alterations . . . to the permitted facility" which "extensively redesign[ed] its effluent treatment system in order to improve effluent quality under all flow conditions." (*Id.*) Discharges prior to January 1, 2012, when the current Permit became effective and the EPA-approved upgrades became operational, are therefore irrelevant to determining whether there is an "ongoing" violation of the permit, as required for any citizen suit under the Clean Water Act. *See Gwaltney of Smithfield, Ltd.* v. *Chesapeake Bay Found., Inc.*, 484 U.S. 49, 59 (1987). Contrary to Plaintiff's assertion, *Gwaltney* requires a citizen plaintiff to prove "a reasonable likelihood that a past polluter will continue to pollute in the future;" it plainly does not authorize discovery into wholly past violations.

  Moreover, as this Court ruled and Plaintiff concedes, discovery into "whether climate change exists" and or "is a cause of" Plaintiff's injuries is "not material" or a proper subject for discovery. (Sept. 12, 2017 Hr'g Tr. 111:20–112:6, 114:23–115:1.) Plaintiff nevertheless seeks

discovery into the impacts of climate change.  Such discovery should not be allowed in light of the pleadings, which do not allege any changes in the magnitude or frequency of severe weather events since the Permit issued.  Instead, the Amended Complaint relies on information that predates the Permit, and thus would have been known to EPA when it issued the current permit, and speculative projections about potential impacts of climate change in the distant future.  The former provides no basis to alter ExxonMobil's obligations under the permit shield and collateral attack doctrine. And the Court has already ruled that Plaintiff cannot pursue the latter because "Plaintiffs do not have standing . . . for claims concerning alleged foreseeable rises in sea level and in severity and frequency of storms in the far future, such as in 2050 or 2100."  (Sept. 12, 2017 Hr'g Tr. 114:9-12; ECF No. 29 at 2 (no standing for injuries "that are unlikely to occur until after the Permit has expired, or if the Permit remains in effect indefinitely, in the near future.").)  Defendants therefore request that the Court cabin discovery to prevent Plaintiff from making a sideshow of climate change issues that are not probative of any actionable claims.

### E.      Bifurcation

Plaintiff:  Plaintiff opposes Defendants' proposed bifurcation of discovery related to issues of liability and remedies as it would create yet a third phase to Defendants' already complicated discovery approach proposed in this matter as described above.  Plaintiff does support bifurcation of liability and remedies as it relates to trial.

Defendants:   Defendant requests bifurcation of both fact discovery and trial as to the issues of liability and remedies.  Courts routinely bifurcate liability and remedies in Clean Water Act cases, where it is deemed "especially appropriate."  *See, e.g.*, *United States* v. *Corning Glass Works*, No. 3:CV-90-0207, 1991 WL 329759, at *1 (M.D. Pa. Sept. 16, 1991).  Specifically, "bifurcating the issues of liability and damages, would be superior in terms of judicial economy

and fairness," *Pruitt* v. *Allied Chem. Corp.*, 85 F.R.D. 100, 113 (E.D. Va. 1980), given that Plaintiff concedes it otherwise intends to front-load onerous discovery into "how to cure" alleged violations, which in all likelihood will not be found to exist.

> **F.     Certifications of Counsel and Authorized Representative.**

Pursuant to Local Rule 16.1(d)(3), each party and its counsel have conferred with respect to establishing a budget for the cost of conducting the various courses of litigation and considering the resolution of this litigation through the use of an appropriate alternative dispute resolution process.  Certifications signed by counsel and by an authorized representative of each party shall be filed together with, or immediately following, this Joint Statement.

<u>Plaintiff:</u>     Should the parties not resolve this matter through informal negotiations by April 30, 2019, Plaintiff submits that an Order of Reference for ADR requiring mediation before a U.S. Magistrate Judge would be appropriate.

<u>Defendant:</u>     Defendants have conferred with its counsel as required by Local Rule 16.1(d)(3).  Defendants submit that the dispute between the parties is essentially legal in nature, it therefore does not believe that an Order of Reference for ADR requiring mediation would be appropriate at this time.

**VII.     Discovery and Preservation of Electronically Stored Information.**

The parties acknowledge their obligation to preserve electronically stored information ("ESI") and have conferred about an agreed upon format for production of ESI.  In the event the Court orders discovery, the parties shall submit a proposed ESI Discovery and Preservation Protocol to the Court by December 12, 2018.

**VIII.   Protection of Confidential and Privileged Information.**

The parties have conferred about a proposed Protective Order governing the exchange of privileged or confidential communications, which shall be submitted to the Court by December 17, 2018.

**IX.   Changes to Discovery Event Limitations.**

The parties could not reach agreement as to whether the limits on fact discovery contained in Local Rule 26.1(c) should be expanded.

Plaintiff believes the complexity of this case warrants enlargement of the discovery limits set forth in Local Rule 26.1(c).   In addition, Plaintiff proposes that successive depositions of a corporation under a single 30(b)(6) notice shall not constitute multiple depositions.   Further, Defendants' proposal does not address their successive phasing proposal as it limits discovery as to the entirety of the case rather than for each phase.

Defendants believe that the default limits on discovery events authorized by Local Rule 26.1(c) are sufficient to resolve the material issues in this case, which are primarily legal in nature. Defendants object to Plaintiff's proposal to use Rule 30(b)(6) depositions to exempt itself from the limits on the number of depositions under Rule 26.1(c).   Each 30(b)(6) deposition should count against the limits imposed by Local Rule 26.1(c).

The parties' positions are summarized as follows:

| Discovery | Initial limit, Local Rule 26.1(c) | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|---|
| Fact Depositions | 10 | 20 per Party | 10 per party |
| Interrogatories | 25 | 40 per Party | 25 per party, counted in accordance with Local Rule 26.1(c) |

| Requests for Admission | 25 | 50 per Defendant on substantive issues; no limit on requests to establish evidentiary admissibility | 25 per party |
|---|---|---|---|
| Sets of Requests for Production | 2 | 4 so long as all responses would be due before the close of fact discovery | 2 per party |

Dated: November 21, 2018

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP

/s/ Daniel J. Toal
Theodore V. Wells, Jr. *
Daniel J. Toal*
Paul, Weiss, Rifkind, Wharton & Garrison, LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990
twells@paulweiss.com
dtoal@paulweiss.com

HOLLAND & KNIGHT LLP
/s/ Deborah E. Barnard
Deborah E. Barnard (BBO # 550654)
Jessica R. Early (BBO # 672878)
Holland & Knight LLP
10 St. James Avenue, 11th Floor
Boston, MA 02116
Tel: (617) 523-2700
Fax: (617) 523-6850
deborah.barnard@hklaw.com
jessica.early@hklaw.com

*Counsel for Defendants Exxon Mobil Corporation, ExxonMobil Oil Corporation, and ExxonMobil Pipeline Company*

*Admitted Pro Hac Vice*

KANNER & WHITELEY, LLC

/s/ Allan Kanner
Allan Kanner*
Elizabeth B. Petersen*
Allison S. Brouk*
Kanner & Whiteley, LLC
701 Camp Street
New Orleans, LA 70130
Tel: (504) 524-5777
Fax: (504) 524-5763
a.kanner@kanner-law.com
e.petersen@kanner-law.com
a.brouk@kanner-law.com

CONSERVATION LAW FOUNDATION, INC.
By its attorneys:
/s/ Zachary K. Griefen
Zachary K. Griefen, Esq., BBO# 665521
Conservation Law Foundation
15 East State Street, Suite 4
Montpelier, VT 05602
(802) 223-5992 x4011
zgriefen@clf.org
/s/ Christopher M. Kilian
Christopher M. Kilian, Esq.
Conservation Law Foundation
15 East State Street, Suite 4
Montpelier, VT 05602
(802) 223-5992 x4015
ckilian@clf.org

*Counsel for Plaintiff Conservation Law Foundation, Inc.*

*Admitted Pro Hac Vice*

## **CERTIFICATE OF SERVICE**

In accordance with Local Rule 5.2(b), I, Deborah E. Barnard, hereby certify that this document filed through the ECF system on November 21, 2018 will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Deborah E. Barnard*
Deborah E. Barnard